### In re ASBESTOS SCHOOL LITIGATION.

**Master File No. 83–0268.**

United States District Court, E.D. Pennsylvania.

March 28, 1985.

---

David Berger, Herbert Newberg, Philadelphia, Pa., for plaintiffs.

Lawrence T. Hoyle, Philadelphia, Pa., for defendants U.S. Gypsum Co., Nat. Gypsum Co. and W.R. Grace & Co.

Ralph W. Brenner, Philadelphia, Pa., for defendants Celotex Corp. & Carey Canada, Inc.

Gwendolyn H. Gregory, Alexandria, Va., for Nat. School Bds. Ass'n.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before this court are certain defendants'[1] (defendants) motions for amendment of the September 28, 1984 Order (Order No. 20). Defendants seek an amendment to include certification of the order for interlocutory appeal pursuant to Title 28 U.S.C. § 1292(b) which states in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Indeed, these defendants argue that Order No. 20 which certified the plaintiff class raises certain controlling questions, which are subject to substantial dispute, and the determination of these questions will substantially affect and advance the outcome of this litigation.

█ Generally an order certifying a class is not subject to interlocutory appeal. *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860 (3d Cir.1977) (en banc), *cert. denied* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). The court reasoned that a class certification order is generally conditional and subject to amendment by the district court.[2] *Id.* at 863. For an interlocutory appeal to be proper the class certification decision must be accompanied by special factors which remove it from the general rule. *Id.* at 862. While the Third Circuit in *Link* did not fully explain what constitutes special circumstances, it did suggest that where it had "considered and reversed class action certification, there were other overruling legal issues ..." *Id.* at 863. *Cf. Coopers & Lybrand v. Livesay*, 437 U.S. 463, 477 n. 30, 98 S.Ct. 2454, 2462 n. 30, 57 L.Ed.2d 351 (The indiscriminate allowance of appeals from such discretionary orders [certification of a class] is plainly inconsistent with the policies promoted by § 1292(b)).

The sparse use of interlocutory review will minimize piecemeal review by the court of appeals. Certainly, the time consumed in taking an appeal may hinder or delay the litigation rather than materially advance it. *Cf. Kamm v. California City Development Company*, 509 F.2d 205 (9th Cir. 1975) (interlocutory appeal was authorized in November, 1973, the court of appeals ruled on the interlocutory appeal in January, 1975).

The defendants have raised seven distinct questions which they contend the court considered when it issued Order No. 20. Defendants argue that there is a substantial difference of opinion as to the resolution of each of these questions and that the resolution of these questions will materially affect and advance the outcome of this litigation. Accordingly, I will review each question separately.

(I) May a Court, on a motion for class certification, decide the issues of commonality (under Fed.R.Civ.P. 23(a)) and predominance (under Fed.R.Civ.P. 23(b)) without making an independent

---

1. Celotex Corp., Carey Canada, Inc., Flintkote Company, Asten-Hill Manufacturing Co., Inc., Uniroyal, Inc., Georgia Pacific Corp., H.K. Porter Co., Southern Textile Corp., Forty-Eight Insulations, Inc., ACandS, Inc., Dana Corp., C. Tennant & Sons, Armstrong World Industries, Inc., GAF, Rock Wool Manufacturing, Nicolet Industries, Wilkins Insulation Company, Empire Ace Insulation, Raymark Industries, Inc.,

U.S. Mineral Products, Bell Asbestos Mines, Combustion Engineering, Inc., and Asbestos Corp. Ltd.

2. Federal Rule of Civil Procedure 23(c)(1) states in pertinent part: "An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."

determination of the elements of proof necessary to establish a *prima facie* case of liability under the plaintiffs' claims, where there is a substantial dispute between the parties concerning the necessary elements of proof, and finding of both commonality and predominance is dependent upon resolution of the issue?

In order to determine whether a factual issue is common, and would predominate in the litigation, defendants maintain it is necessary to first decide what proof is required in order for the different class members to establish their claims.[3] Defendants cite the following to support their position: *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 448 (3d Cir.1977) *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791. *See Unger v. Dunkin' Donuts of Am., Inc.*, 68 F.R.D. 65, 79, 139 (E.D.Pa.1975) *rev'd*, 531 F.2d 1211 (3d Cir.) *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976).

What the courts generally look to in evaluating a predominance question is the existence of a "common nucleus of operative facts".

The dispute here is not over the proper element of plaintiffs' causes of action, but over what facts are sufficient to prove them.

Even under defendants' theory of the case, the question of "the general health hazards of asbestos" is central to the litigation. Moving defendants suggest that the question somehow involves only the damages of raw asbestos exposure at high levels. It does not; the question susceptible to common proof is the level of exposure at which asbestos becomes hazardous.

Similarly, "defendants' knowledge or reason to know of asbestos hazards" does not refer only to what defendants knew about the hazards of raw asbestos. The question is what defendants knew about asbestos exposure at the levels found in schools in any context—raw asbestos or otherwise. This is a question whose answer remains constant for all plaintiffs and which would have to be resolved in each individual case. Whether defendants did or did not warn about or test their product, and whether defendants did or did not act in concert with respect to what they knew about asbestos, are likewise factual questions that underlie the lawsuit no matter what is deemed sufficient proof of a *prima facie* case.

Accordingly, by identifying the common questions in this lawsuit, this court has neither abandoned its responsibility to identify the elements of plaintiff's *prima facie* case nor embraced an erroneous legal theory. It has simply made the determination that a certain common nucleus of fact constitutes a significant part of the individual claims. *See Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 690–91 (E.D.Pa.1977) where Judge Higginbotham (now a judge on the Third Circuit) held that all that is required is a showing by plaintiffs that their cause of action arises out of a common nucleus of operative facts.

This case is distinguishable from *Ungar v. Dunkin' Donuts*, 68 F.R.D. 65 (E.D.Pa. 1975), *rev'd*, 531 F.2d 1211 (3d Cir.1976), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), which moving defendants appear to believe is dispositive. In *Ungar*, the district court's finding that common questions predominated for class purposes was expressly premised on its legal conclusion that *coercion*, a particular element of the plaintiff's case, could be proved by *general* evidence of defendants' marketing practices. *See* 531 F.2d at 1213. Here the court has made no such legal conclusions about the element of proof of plaintiffs' case on liability; it has simply isolated basic questions of fact, common to all plaintiffs, that they must be answered no matter what constitutes a *prima facie* case. Certification in this case will not necessarily fall if plaintiffs cannot establish their claims in the common fashion they espouse.

---

**3.** It appears that defendants here seek a ruling as to the elements of plaintiffs' claims rather than whether there exists common ground from which plaintiffs seek relief.

Furthermore, the class certification in this case was expressly made conditional under Fed.R.Civ.P. 23(c)(1). *See* at 427. Therefore, this court is free to alter or amend its class order before decision on the merits; it may also, under Fed.R.Civ.P. 23(c)(4), create subclasses as necessary to manage or deal with variations in proof that may develop as the litigation progresses. When an order is open to this sort of discretionary modification, interlocutory review is particularly inappropriate. *Link v. Mercedes-Benz of N.A., Inc.*, 550 F.2d at 863.

■ Additionally, see *In Re Asbestos School Litigation*, 104 F.R.D. 422, 430 (E.D.Pa., 1984), where I held, "[c]laims [are considered] typical when the 'essence' of the allegations concerning liability, and not the particularities, suggest adequate representation of the interests of the proposed class members". Moreover, "a plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." (citation omitted). Here, plaintiffs' claims raise common issues among all class members. For these reasons, I do not find that the question presented is proper for interlocutory review.

■ Defendants further suggest to the court, in the alternative of (I):

(II) Whether "a *prima facie* case of breach of a legal duty under the theories of liability specified in the complaint" (including negligence, strict liability, breach of warranty and "intentional tort") would be established merely by proof of the following:

(a) the general health hazards of asbestos;

(b) defendants' knowledge or reason to know of the health hazards of asbestos;

(c) defendants' failure to warn/test; and

(d) defendants' concert of action and/or conspiracy;

or is more required?[4]

Defendants maintain the issue of whether any one of these products as installed in a school is friable, hazardous and defective and whether any particular defendant breached a duty to warn of such hazard, if any, is not significantly advanced by findings concerning the "general health hazards" of asbestos.

However, plaintiffs have taken considerable effort to demonstrate the elements of breach of legal duty of each claim and the proof required. For example, under the negligent failure to warn claim, premised upon Section 388 of the *Restatement (Second) of Torts, (1965)* plaintiffs are obliged to establish the following elements in order to establish a defendant's breach of legal duty:

§ 388. Chattel Known to be Dangerous for Intended Use

One who supplies [1] directly or through a third person a chattel for another to use is subject to liability [2] to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, [3] for physical harm caused by the use of the chattel [4] in the manner for which and by a person for whose use it is supplied, if the supplier [5] (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and [6] (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and [7] (c) *fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.* (emphasis added).

Similarly, with respect to the strict liability claim, premised upon Section 402(A) of the Restatement, plaintiffs, in order to establish defendants' breach of legal duty,

---

4. Defendants seem to suggest that plaintiffs fail to state a cause of action or claim. But here because the plaintiffs all bring actions similar in nature and grounded in a common fact pattern, class certification is proper.

would have to establish the following elements:

(a) a defective product;

(b) unreasonably dangerous to the user or its property; and

(c) expected to and reaching the user in its manufactured form.

Plaintiffs contended that breach of legal duty both as to negligence and as to strict liability can be established by proof of some or all of the following factual issues:

(a) general health hazards of asbestos (including the hazards of low level environmental exposure);

(b) defendants' knowledge or reason to know of those health hazards; and

(c) defendants' failure to warn.

I carefully reviewed these allegations and concluded that these factual issues and the issue of concert of action and conspiracy were "at the core of all the damage claims for relief" (At 432); however, I am not saying that they constitute the precise elements of each claim. Moreover, the court was careful to note that the common questions which the court identified would dominate other issues at trial:

> The first element to be analyzed to determine whether common questions of law or fact predominate over individual ones pursuant to Rule 23(b)(3) is the alleged violations of law as to which class certification is sought. As discussed previously, the complaint alleges six claims for damages: negligence, strict liability, breach of warranty, intentional tort, concert of action and civil conspiracy.

> These claims, as noted, arise out of the same common nucleus of operative facts relating to defendants' conduct and the nature of asbestos products. Common questions relating to the hazards of asbestos, the knowledge of the defendants of the hazards, industry policies and practices and defendants' failure to warn and to test are at the core of all the damage claims for relief, and will domi-

nate other issues at trial, regardless of how defendants' conduct is characterized in terms of a specific tort.

At 432.

This is hardly error, let alone error as a matter of law. Indeed, the court was recognizing what has become commonplace in product liability law, namely, the convergence of proof of a prima facie case of breach of legal duty no matter how the tort is characterized.[5]

For these reasons, I do not find this question proper for interlocutory appeal certification.

(III) Whether this court's certification of a Rule 23(b)(1)(B) mandatory class on the issue of punitive damages and its issuance of the April 13, 1984 injunction, as subsequently modified, violates the Anti-Injunction Act, 28 U.S.C. § 2283.

A class action is not an exception to the Anti-Injunction Act. *In Re Glen W. Turner*, 521 F.2d 775, 781 (3d Cir.1975). Thus, the fact that the instant matter deals with a class action does not bar the application of the Anti-Injunction Act. Defendants claim that by this court adopting the dissent in *In Re Skywalk Litigation*, 680 F.2d 1175 (8th Cir.1982), *cert. denied* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1983), *see In Re Asbestos School Litigation*, 104 F.R.D. 422, 434–36 (E.D.Pa., 1984), there must be a substantial difference of opinion.

I held in my September 28, 1984 Memorandum:

> Judge Weinstein [*In Re Agent Orange Litigation*, 100 F.R.D. 718 (E.D.N.Y. 1983)] concluded that a limited fund mandatory class should be established on the issue of punitive damages. Judge Weinstein reasoned as follows:

> > [T]here is a substantial probability that limited punitive damages may be allowed. If they are, it would be equitable to share this portion of the possible award among all plaintiffs

---

5. The proof required of a plaintiff seeking to recover for injuries from an unsafe product is very largely the same, whether his cause of action rests upon negligence, warrant, or strict liability in tort. W.L. Prosser, *The Law of Torts*, 671 (4th edition 1971).

who ultimately recover compensatory damages. Yet, if no class is certified under Rule (b)(1)(B), non-class members who opt out under Rule 23(b)(3) would conceivably receive all of the punitive damages or, if their cases are not completed first, none at all.

It is axiomatic that the purpose of punitive damages is not to compensate plaintiffs for their injury, but to punish defendants for their wrongdoing. In theory, therefore, when a plaintiff recovers punitive damages against a defendant, that represents a finding by the jury that the defendant was sufficiently punished for the wrongful conduct. There must, therefore, be some limit, either as a matter of policy or as a matter of due process, to the amount of times defendants may be punished for a single transaction.... There is, therefore, a substantial probability that 'adjudication with respect to individual members of the class ... would as a practical matter be dispositive of the interests of the other members not parties to the adjudication.'

*Id.* at 728 (citations omitted).

Judge Weinstein's analysis of Rule 23(b)(1)(B) certification substantially comports with Judge /Heaney's dissenting opinion in *Skywalk* which states in relevant part:

Apart from the defendants' capacity to pay punitive damages there is surely some limit imposed by law on the amount for which they can be held liable for a single wrongful act or course of conduct. Unlimited multiple punishment for the same act determined in a succession of individual lawsuits and bearing no relation to the defendants' culpability or the actual injuries suffered by victims, would violate the sense of 'fundamental fairness' that is essential to constitutional due process.

680 F.2d at 1188 (citations omitted) (Heaney, J. dissenting).

*In Re Asbestos School Litigation,* 104 F.R.D. 422, 435 (E.D.Pa.1984).

■ The Anti-Injunction Act applies only to existing proceedings in state courts; it erects no bar to injunctions against either federal proceedings, pending or prospective, or prospective state proceedings. *See Dombroski v. Pfister, Chairman, Joint Legislative Committee on Unamerican Activities of the Louisiana Legislature,* 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1965); *In Re Federal Skywalk Cases,* 680 F.2d 1175, 1180 (8th Cir.1982) *cert. denied,* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1982). Injunctions in those categories are wholly unaffected by the Act, and are proper when necessary to protect and manage a class action. *See Robertson v. National Basketball Ass'n.,* 413 F.Supp. 88 (S.D.N.Y.1976) (upholding injunction against post-class certification suit by members of plaintiff's class), *aff'd* 622 F.2d 34 (2d Cir.1980).

On April 13, 1984 there were only a handful of cases with punitive damages claims. Therefore, even if the defendants were to prevail on their Anti-Injunction Act argument, it would only eliminate few of the thousands of claims that will be tried in the mandatory class.

The minimal impact on the case of the proposed question, even if reversed on appeal, may arguably provide questionable basis for interlocutory review. *See In Re Agent Orange Product Liability,* 100 F.R.D. 735, 736 (E.D.N.Y.1983) (minimal effect on conduct of trial is a ground for denying interlocutory appeal).

■ However, because of divergent theories, and in light of Order No. 39 in this matter (enjoining Anderson County), I will certify this question for interlocutory review.

(IV) Whether certification of a Rule 23(b)(1)(B) mandatory class on the issue of punitive damages violates fundamental principles of federalism and comity and the Tenth Amendment by intruding in matters traditionally committed to local control.

Both the school districts and the defendants have been precluded from litigating

the issue of punitive damages in the local courts. Defendants argue that this is in violation of 10th amendment which states, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

This court found the intrusion minimal, thus not entrusted to those matters traditionally committed to local control. *In Re Asbestos School Litigation*, 104 F.R.D. 422, 437 (E.D.Pa.1984).

Defendants argue that the mandatory class:

(1) Imposes a restriction directly on local governments;

(2) Directly affects the school districts' governmental function of establishing and maintaining school facilities;

(3) Impairs the school districts' ability to structure and handle and prosecute these property damages lawsuits. Citing *Nat'l League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); *Hodel v. Va. Surface Mining & Reclamation*, 452 U.S. 264, 287–88, 101 S.Ct. 2352, 2365–66, 69 L.Ed.2d 1 (1981).

Moving defendants suggest that because the plaintiffs in this case are local school boards, the amendment gives them a constitutional right to a choice of forum in which to litigate their asbestos property damages claim. But there is no authority for this position. Moving defendants' reliance upon *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), is misplaced, especially where *National League of Cities* dealt with the limitations of the power of Congress acting under the commerce clause to regulate states.

Because there is no substantial ground for disputing this court's tenth amendment ruling, interlocutory review of the decision must be denied.

Furthermore, in light of the recent Supreme Court decision overruling *National League of Cities*, *Garcia v. San Antonio Metropolitan Transit Authority*, ––– U.S. –––, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), to the extent defendants rely on *National League of Cities*, this issue is moot.

(V) Whether uncertain claims for punitive damages can ever form the basis of mandatory Rule 23(b)(1)(B) class certification—especially in the absence of an evidentiary record. If so, whether this court applied the proper standard in determining that the plaintiffs' punitive damages claims could form the basis of such mandatory class treatment.

I held that early awards of punitive damages will impair the ability of future claimants to obtain punitive damages. *See In Re: Asbestos School Litigation*, at 437.

However, defendants assert there is no evidence that there is a limited fund. Certification of a mandatory class for punitive damages was held to violate the Anti-Injunction Act. *In Re Federal Skywalk Cases*, 680 F.2d 1175, 1182 (8th Cir.1982) *cert. denied* 459 U.S. 988, 103 S.Ct. 342, 74 L.Ed.2d 383 (1983). In the case at bar, the court based compliance with 23(b)(1)(B) not on the existence of a physically "limited fund" of defendants' assets, but rather on the legal proposition that due process, or some equitable notion of fairness, limits the amount of punitive damages that may be assessed against defendants faced with a massive number of individual claims. *In Re: Asbestos School Litigation, supra* at 434–435.

Plaintiffs contend immediate resolution of this question will not materially advance the termination of this case. Even with the opt-out provision for the compensatory damages class, this court can anticipate massive litigation, involving a large number of plaintiffs—either from decisions not to opt out or consolidation. A number of those plaintiffs will make claims for punitive damages. Even if the mandatory certification was reversed, this litigation is likely to proceed to trial in essentially the same manner, including a determination of the punitive damage claims. Immediate

appellate review would thus not affect the progress of this case.

In Re: Agent Orange Litigation, 100 F.R.D. 735, 736 (E.D.N.Y.1983) the court certified an opt-out class on compensatory damages and a mandatory class, based on the existence of a "due process" limit, on punitive damages. In denying § 1292(b) certification, the court specifically rejected the contention that immediate review would conserve judicial and lawyers' time, save expenses or in any way shorten or alter the litigation, since the case would continue on a large scale in any event. This case is indistinguishable from that one.

For all of these reasons, it would not be proper to certify this question for interlocutory appeal.

(VI) Whether, in a federal diversity case, certification of a nationwide Rule 23(b)(1)(B) mandatory class on the issue of punitive damages violates due process as to class members who do not possess the requisite "minimum contacts" to be subject to the court's personal jurisdiction.

At least two courts have held that in a plaintiff class action, the court need not possess actual *in personam* jurisdiction over the members of the class, that due process requires only that there be adequate representation and notice. *See, e.g., Miner v. Gillette Co.*, 87 Ill.2d 7, 56 Ill.Dec. 886, 889–90, 428 N.E.2d 478, 481–82 (1981), *cert. granted*, 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173, *cert. dismissed*, 459 U.S. 86, 103 S.Ct. 484, 74 L.Ed.2d 249 (1982); *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 196, 679 P.2d 1159, 1168, *cert. granted*, —— U.S. ——, 105 S.Ct. 242, 83 L.Ed.2d 181 (1984).

Defendants assert that other courts have required minimum contacts and have cited as authority *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Feldman v. Bates Mfg. Co.*, 143 N.J.Super. 84, 362 A.2d 1177, 1180 (App. Div.1976).

The due process question that the movant defendants raise is the same as or similar to that which will be decided by the Supreme Court this term in *Phillips Petroleum Co. v. Shutts*, —— U.S. ——, 105 S.Ct. 242, 83 L.Ed.2d 181 (1984) (order granting *cert.*, —— U.S. ——, 105 S.Ct. 2965, 86 L.Ed.2d 628). Therefore, plaintiffs contend there is no need for an appeal now to the Third Circuit. Furthermore, the plaintiffs cite the Supreme Court's decision in *Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940) for authority that the court in a class action need not have in personam jurisdiction over each individual of the class:

It is familiar doctrine of the federal courts that members of a class not present as parties to the litigation may be bound by the judgment where they are in fact adequately represented by parties who are present, or where they actually participate in the conduct of the litigation in which members of the class are present as parties, or where the interest of the members of the class, some of whom are present as parties, is joint, or where for any other reason the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter.

In all such cases, so far as it can be said that the members of the class who are present are, by generally recognized rules of law, entitled to stand in judgment for those who are not, we may assume for present purposes that such procedure affords a protection to the parties who are represented though absent, which would satisfy the requirements of due process....

Plaintiffs contend without the rule that by having jurisdiction over the class representative, the court has jurisdiction over the class, most multistate class actions would cease to exist. Certainly it is difficult to imagine many such cases where all class members have contacts with the forum. *Cf. Robertson v. National Basketball Association*, 413 F.Supp. 88 (S.D.N.Y. 1976) *aff'd* 622 F.2d 34 (2nd Cir.1980) (district court held, notwithstanding the fact

that third party was not presently before the court, but rather, outside its territorial jurisdiction, that in an ongoing class action in which third party was a member in a 23(b)(1) class, it had power to enjoin third party from bringing an identical suit in another jurisdiction).

One of the state court cases holding that the "minimum contacts" test does not apply even to a state court nationwide class brought under a state court class action rule [6] succinctly indicates why this court should appropriately refuse to entertain defendants' argument in this federal court class action:

> In *Shutts I* [*Shutts* I was an earlier Kansas case which presented similar legal issues and a similar factual situation as presented in the later *Shutts* case] the court rejected Phillips' contention that the trial court did not have jurisdiction over *in personam* claims of unnamed nonresident class plaintiffs having no contact with Kansas. In so doing the court first examined the 'minimum contacts' requirement established in *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, for exercising *in personam* jurisdiction by a state over a nonresident *defendant.* The court held the 'minimum contacts' test is inapplicable to nonresident *plaintiffs* in a class action, reasoning:
>
> > Whether all *nonresident plaintiffs* in a class action are required to have 'minimum contacts' with the forum is a different matter. Because a class action must necessarily proceed in the absence of almost every classmember, we hold the residential makeup of the class membership is not controlling ... What is important is that the nonresident plaintiffs *be given notice and an opportunity to be heard and that their rights be justly protected by adequate representation. These are the essential requirements of due process, and they must be satisfied in any class action by every court, state*

> *or federal, regardless of the residence of the absent class members.* Therefore, while the essential element necessary to establish jurisdiction over nonresident defendants is some 'minimum contacts' between the defendant and the forum state, the element necessary to the exercise of jurisdiction over nonresident plaintiff class members is procedural due process.

*Shutts, supra,* 679 P.2d at 1167 (citations omitted) (emphasis added and in the original).

Plaintiffs assert even if the United States Supreme Court, in its review of the *Shutts* decision,[7] finds that the above analysis does not apply to nationwide class actions brought in *state* courts, it would not necessarily control the instant action since *Shutts* was a *state* court case while the present action is in federal court, and different rules are applicable in federal courts. Indeed, plaintiffs assert the New Jersey Superior Court noted this distinction between federal and state courts in *Feldman v. Bates Manufacturing Co.,* 143 N.J. Super. 84, 362 A.2d 1177, 1179–80 (App. Div.1976), a case cited by defendants as being adverse authority on the issue of whether plaintiffs herein can assert a nationwide class in federal court:

> At the outset we note that the limitation on our jurisdiction over the members of the class here is one peculiar to state courts. Due to the broad scope of the federal judicial power (U.S. Const., Art. III) there can be no constitutional objection to the exercise of nationwide jurisdictional power where an action is brought in federal court. Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 45 S.Ct. 621 [622], 69 L.Ed. 1119 (1925); Note, "Binding Effect of Class Actions," 67 Harv.L.Rev. 1059, 1066 (1954). However, as a consequence of the territorial limitations of state power, the Due Process Clause of the Fourteenth Amendment limits the judicial

---

**6.** *Shutts v. Phillips Petroleum Co.,* 235 Kan. 195, 679 P.2d 1159, *cert. granted,* —— U.S. ——, 105 S.Ct. 242, 83 L.Ed.2d 181 (1984).

**7.** As indicated above, *certiorari* was granted.

power of the states. *Hanson v. Denckla*, 357 U.S. 235, 249–51, 78 S.Ct. 1228 [1237–38], 2 L.Ed.2d 1283 (1958); *Pennoyer v. Neff*, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1878). (emphasis supplied)

*See also*, Note, *Multistate Plaintiff Class Actions: Jurisdiction and Certification*, 92 Harv.L.Rev. 718, 723–24 (1979):

Any inquiry into multistate class action must deal at the outset with the perhaps common assumption that the issue of jurisdiction over absent plaintiff class members is purely illusory .... *But the ability of federal courts to bind United States residents does not prove that state courts can bind the residents of other states. The analogous question in federal jurisprudence is not that of the court's ability to bind residents of various states, but rather that of its ability to bind residents of other nations.* In cases presenting the latter issue, the federal courts have confronted problems of extraterritorial recognition similar to those posed in this Note. (footnotes omitted; emphasis added).

 While the number of plaintiffs may diminish if defendants' argument prevail, the class action will still move forward since many plaintiffs do have contacts with this jurisdiction as well as many will consent to the jurisdiction. I find plaintiffs' position sound. For the foregoing reasons, I will not certify this question.

 (VII) Whether, in this diversity case, certification of a nationwide Rule 23(b)(1)(B) mandatory class on the issue of punitive damages was proper in light of the limitation on Pennsylvania's territorial jurisdiction enunciated in *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12, *cert. denied*, 429 U.S. 828 [97 S.Ct. 86, 50 L.Ed.2d 91] (1976).

In *Klemow v. Time, Inc.*, 466 Pa. 189, 352 A.2d 12, *cert. denied*, 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976), the Pennsylvania Supreme Court stated:

Here it is conceivable that appellant could plead and establish that he can properly represent a class composed of all Pennsylvania residents* ...

* Because the jurisdiction of the courts of the Commonwealth is territorially limited, the class may only consist of Pennsylvania residents and nonresidents who submit themselves to the jurisdiction of the State courts. *Id.*, 352 A.2d at 16. (citations omitted)

Defendants reason that it is axiomatic that a federal court, sitting in diversity, is "in effect, only another court of the state". *Guaranty Trust v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945); and, therefore, has no greater *in personam* jurisdiction than courts of the state in which it sits. *Rees v. Mosaic Technologies, Inc.*, 742 F.2d 765, 767 (3d Cir.1984).

Further, the defendants maintain that the Supreme Court has recently reaffirmed the importance of this doctrine holding that, "there is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts ... should proceed through litigation to judgment in federal courts solely because of the fortuity that there is diversity of citizenship between the litigants." *Walker v. Armco Steel Corp.*, 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980).

Defendants conclude that since Pennsylvania does not purport to assert jurisdiction over non-residents in a mandatory class, the federal court is, therefore, precluded from doing so. Conversely, plaintiffs suggest notwithstanding the fact that defendants cite no case decided on the basis of *Erie* and *Klemow*, their argument fails to consider for the Supreme Court's holding in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). In *Hanna*, the issue was whether the Massachusetts service of process rule would be applied rather than Fed.R.Civ.P. 4(d)(1). The Court stated:

[Defendant] ... suggests that the *Erie* doctrine acts as a check on the Federal Rules of Civil Procedure, that despite the clear command of Rule 4(d)(1), *Erie* and its progeny demand the application of the Massachusetts rule. Reduced to essentials, the argument is: (1) *Erie*, as refined in *York*, demands that federal

courts apply state law whenever application of federal law in its stead will alter the outcome of the case. (2) In this case, a determination that the Massachusetts service requirements obtain will result in immediate victory for respondent. If, on the other hand, it should be held that Rule 4(d)(1) is applicable, the litigation will continue, with possible victory for petitioner. (3) Therefore, *Erie* demands application of the Massachusetts rule. The syllogism possesses an appealing simplicity, but is for several reasons invalid.

*Id.* at 466, 85 S.Ct. at 1141. *See also Rees v. Mosaic Technologies, Inc.,* 742 F.2d 765, 766–67 (3d Cir.1984).

The court in *Hanna* Court did not apply the *Erie* "outcome determinative" test. Rather, the court stated that where a federal rule is on point the appropriate inquiry is:

> When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions. (footnotes omitted)

*Hanna v. Plummer,* 380 U.S. at 471, 85 S.Ct. at 1144 (1965). *See also In Re Asbestos School Litigation,* 104 F.R.D. 422, 436–37 (E.D.Pa.1984).

Indeed, it is hornbook law that in diversity cases in federal courts, federal procedural law controls and that, if a matter is governed by a federal rule of procedure, the matter is deemed to be a part of procedural law.

Thus, Pennsylvania court rulings on procedure cannot bind a federal court sitting in diversity matters. However, even if the movants' personal jurisdiction theories were correct, this case at least would involve a class of Pennsylvania school authorities and, presumably some authorities outside of Pennsylvania would consent to jurisdiction here.

Even if moving defendants' jurisdictional arguments were sustained, the case at bar would still be a class action involving plaintiffs from all, or substantially all, parts of the United States.

■ For this reason, the personal jurisdiction issues are neither "controlling questions of law" nor questions as to whether an interlocutory appeal will "materially advance the ultimate termination of the litigation. Even if this case involved only a single plaintiff, the same matter of discovery and proof at trial would need to be determined. Expansion of the case to include hundreds or thousands of class members will not change that requirement. It is for this reason that class certification decision, despite their "significant pretrial effect on the litigation", generally are not appropriate for interlocutory appeal. *Link, supra,* 550 F.2d at 862–63.

The question raised by defendant does not go to whether or not there will be a plaintiff class, but rather what size it will be.

By definition, a school authority will not be a member of that class unless it voluntarily chooses to do so. By not electing to opt out the school authority becomes a class member. Indeed, personal jurisdiction can be waived by a party. Pennsylvania Long Arm Act 42 Pa.Cons.Stat.Ann. § 5301 (Purdon 1984).

Last, plaintiffs contend that defendants do not have standing to raise this issue. I do not agree; the mere fact that defendants have a real stake in the outcome of this litigation confers standing upon them to raise the instant jurisdictional issue. However, even if the defendants were to be successful in this jurisdictional issue, the class would still be comprised of the Pennsylvania school districts as well as those school districts that voluntarily permit themselves to come within the jurisdiction of this court.

For all the foregoing reasons, I do not find this question appropriate for interlocutory appeal certification.

### ORDER NO. 43

AND NOW, this 28th day of March, 1985, for the reasons set forth in the foregoing Memorandum, and in consideration of certain defendants' motions and responses thereto, Pretrial Order No. 20 (issued September 28, 1984) is hereby amended by the addition of the following paragraph:

8. The instant order, certifying the class under Fed.R.Civ.P. 23(b)(1)(B) for punitive damages and its injunctive effect against current litigation for punitive damages outside the class involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of this litigation. Specifically, this order involves the resolution of the following question which I hereby certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b): whether this court's certification of a Rule 23(b)(1)(B) mandatory class on the issue of punitive damages and its issuance of the April 13, 1984 injunction, as subsequently modified, violates the Anti-Injunction Act, 28 U.S.C. § 2283.