143 N.J. Super. 84 (1976)
362 A.2d 1177
BERNICE FELDMAN, AS CUSTODIAN FOR BARBARA JANE FELDMAN ET AL., PLAINTIFFS-RESPONDENTS,
v.
BATES MANUFACTURING CO., INCORPORATED, A DELAWARE CORPORATION, ET AL., DEFENDANTS-APPELLANTS, AND IRVING TRUST COMPANY, A NEW YORK BANKING INSTITUTION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1976.
Decided July 13, 1976.
*87 Before Judges LYNCH, LARNER and HORN.
Mr. Marc Joseph argued the cause for appellants (Messrs. Stein and Rosen, attorneys; Messrs. Marc Joseph and Lewis M. Lefkowitz on the brief).
Messrs. Howard T. Rosen and William C. Slattery argued the cause for respondents (Messrs. Rosen and Weiss, attorneys; Mr. William J. Balcerski on the brief).
The opinion of the court was delivered by LYNCH, P.J.A.D.
Leave having been granted, defendants appeal from an interlocutory order of the Chancery Division determining that the instant action was maintainable as a class action on behalf of those holders of preferred stock of defendant Bates Manufacturing Co. (Bates), a Delaware corporation, who failed to convert their shares into common stock on or before the close of business on May 16, 1975 (hereafter "cutoff date"). Bates had notified its preferred stockholders that May 16, 1975 was the last day on which the privilege of conversion could be exercised. The notice provided that if conversion were not sought by that date, the stock would be redeemed. Plaintiff claimed that such notice did not comply with Bates' corporate charter.
In her complaint on behalf of herself and all other members of the alleged class, plaintiff sought to compel Bates to convert the stockholders' preferred stock into common stock of the corporation despite their failure to request conversion by the cutoff date. Plaintiff also sought compensatory and punitive damages, attorney fees and costs. If this action succeeds, members of the class will apparently obtain a substantial financial gain because the common stock they *88 will receive for each preferred share has a greater value than the redemption price of a preferred share.
The trial judge found that plaintiff had established all of the requirements of maintaining a class action as provided in R. 4:32-1. The court's order set forth three questions of law which were said to be common to the class: (1) was adequate notice given of the redemption and termination of the conversion privilege of the preferred stock; (2) did the officers and directors of Bates violate their fiduciary duty to the preferred stockholders, and (3) did Bates violate its certificate of incorporation by setting the cutoff date on May 16, 1975, which was 11 days before the redemption date of the stock rather than 10 days before the redemption date as allegedly required by the corporate charter. It is contended that contrary to their rights under the charter, the preferred stockholders were deprived of one day more to exercise their right to convert.
The trial judge determined that the class on whose behalf this action could be maintained consists of the 295 holders of Bates' preferred stock who failed to convert their shares by the cutoff date. We are advised by counsel for Bates that of the 294 members of the class other than plaintiff, only 31 are residents of New Jersey. Plaintiff's counsel correctly observes that there is no proof in the record in this respect. It is also true, however, that plaintiff, who had the burden of producing proof to justify the class action, failed to produce any proof as to the proportion of the members of the class who are subject to the jurisdiction of the New Jersey court. For the purpose of this opinion we accept the representation that 263 members of the class are not residents of this State.
The dispositive issue here is whether a class action is appropriate in light of the circumstances that the plaintiff class consists primarily of nonresidents of New Jersey who have no contacts whatsoever with this State; that defendant is a foreign corporation not authorized to do business and with no assets in this State and, further, that New Jersey has *89 no significant interest in determining the issues involved in the litigation.
We conclude that class action certification is not appropriate for these reasons: (1) a judgment for or against the class would not satisfy due process with respect to the 263 members of the class who are nonresidents of New Jersey; (2) even if jurisdiction did exist as to such nonresidents, the doctrine of forum non conveniens would militate against New Jersey's assumption of the burden of this litigation.

I

Jurisdiction
At the outset we note that the limitation on our jurisdiction over the members of the class here is one peculiar to state courts. Due to the broad scope of the federal judicial power (U.S. Const., Art. III) there can be no constitutional objection to the exercise of nationwide jurisdictional power where an action is brought in federal court. Robertson v. Railroad Labor Board, 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119 (1925); Note, "Binding Effect of Class Actions," 67 Harv. L. Rev. 1059, 1066 (1954). However, as a consequence of the territorial limitations of state power, the Due Process Clause of the Fourteenth Amendment limits the judicial power of the states. Hanson v. Denckla, 357 U.S. 235, 249-251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); Pennoyer. v. Neff, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 (1878). Simply put, a state court cannot exercise binding jurisdiction over persons residing outside its boundaries unless there is some reasonable basis for doing so. A state court does not have jurisdiction over, and therefore cannot bind to a judgment, an individual with whom the state has no "contacts, ties or relations." International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); accord, Hanson v. Denckla, supra, 357 U.S. at 251, 78 S.Ct. 1228. Note, "Multistate Consumer Class Actions," 25 Hastings L.J. 1411 (1974); *90 Note, "Expanding the Impact of State Court Class Action Adjudications," 18 U.C.L.A.L. Rev. 1002 (1971). However, if a party does have contacts with a state, he can be subjected to the jurisdiction of its courts if the quality and nature of the contacts are such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe, supra, 326 U.S. at 316-319, 66 S.Ct. at 158, quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). As is discussed below, there are also cases where a state's interest in the litigation has been deemed of such magnitude that it can exercise jurisdiction over nonresident class members. Frequently these cases involve a class which has made contributions to a "common fund." Since it cannot be contended that the nonresident class members here have the requisite minimal contacts with New Jersey, jurisdiction, if it exists, must be predicated on the latter basis.
The leading "common fund" case is Hartford Life Ins. Co. v. Ibs, 237 U.S. 662, 35 S.Ct. 692, 59 L.Ed. 1165 (1915). In that action the insurer was a Connecticut corporation and the fund involved was made up of assessments on 12,000 policyholders who were members of the insurer's "Safety Fund Department." The fund was used to pay death benefits and was replenished by quarterly assessments on the policyholders. Mrs. Ibs contested the validity of an assessment. Although Mrs. Ibs was a resident of Minnesota, the Supreme Court held that she was bound by a prior Connecticut judgment which had been rendered in a class action brought on behalf of all the policyholders, but to which she had not been made a party. The Connecticut judgment had upheld the insurer's right to assess the policyholders in the manner to which Mrs. Ibs objected.
The Supreme Court's seeming departure in Ibs from the accepted notions of jurisdictional power was based on its awareness of the special factors involved in a dispute over a common fund insurance plan. The court reasoned that since the policyholders owned the fund in common, it was *91 imperative that the obligation to pay assessments and the right to receive payments from the fund be the same for all policyholders, and not vary according to the state of residence. The court further noted that since Connecticut was the state where the insurer was chartered and where the fund was maintained, the courts of that state had jurisdiction over all questions relating to the internal management of the corporation including management of the common fund, and thus Connecticut had the right to determine the character of the interest of all members of the class, no matter where located. It was because of Connecticut's special interest in determining the issue involved that the Supreme Court held that the judgment was binding on nonresident members of the class. 237 U.S. at 670-671, 35 S.Ct. 692.
An additional example of the power of a state court to bind nonresident members of a class arose out of the reorganization of the Pacific Mutual Life Insurance Company of California. In the original action the California Supreme Court upheld the right of the California insurance Commissioner to reorganize the insurance company against the wishes of the plaintiff class of policyholders. Carpenter v. Pacific Mutual Life Ins. Co., 10 Cal.2d 307, 74 P.2d 761 (1937), aff'd sub nom. Neblett v. Carpenter, 305 U.S. 297, 59 S.Ct. 170, 83 L.Ed. 182 (1938). The court did not rely solely on the "common fund" aspects of the controversy but stressed the interest of California in regulating and rehabilitating an insurance company organized in that state. Cf. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The California state court judgment was subsequently held binding on nonresident policyholders in several other states. Padway v. Pacific Mutual Life Ins. Co., 42 F. Supp. 569 (E.D. Wis. 1942); Larson v. Pacific Mutual Life Ins. Co., 373 Ill. 614, 27 N.E.2d 458, cert. den. 311 U.S. 698, 61 S.Ct. 137, 85 L.Ed. 452 (1940); Taylor v. Pacific Mutual Life Ins. Co., 214 N.C. 770, 200 S.E. 882 (1939). Other instances of the binding *92 effect on nonresidents of class actions which adjudicate interests in a common fund include Sovereign Camp of the Woodmen of the World v. Bolin, 305 U.S. 66, 59 S.Ct. 35, 83 L.Ed. 45 (1938), and Supreme Council of the Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089 (1915); cf. Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921).
It is clear from the above that in those cases where extra-territorial binding effect has been accorded a state court class action, there was some "foothold" of jurisdiction in the forum state. No such factor is present in this case. There is no fund in New Jersey. Bates is a corporation of the State of Delaware and indeed is not even authorized to do business in this State. New Jersey has no special interest in supervising the conduct of Bates' business. Finally, the nonresident stockholders have no contacts with New Jersey which would warrant the exercise of jurisdiction over them by a court of this State.
It might be argued that the view that a class action here could bind nonresidents finds support in a case such as In re United States Financial Securities Litigation, 69 F.R.D. 24 (S.D. Calif. 1975), wherein the court certified a class action despite the fact that most of the members of the class were citizens of foreign countries. A thorough analysis of United States Financial demonstrates the compelling interest of the United States in the litigation. The suit charged that the defendants had committed fraud and violated § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78j) in connection with the issuance of debentures by a Delaware corporation. The court's opinion demonstrates beyond peradventure that the United States was not only the superior forum in which to litigate the issues but was, in fact, the only forum where the case could effectively be brought against the single solvent defendant. Obviously the United States has a special interest in providing for *93 the fair and uniform enforcement of the federal securities laws against American corporations. See also, Bersch v. Drexel Firestone, Inc., 519 F.2d 974 (2 Cir.), cert. den. 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975). In the present case New Jersey has no equivalent interest at stake since Delaware, Bates' domiciliary state, is fully capable of providing a uniform determination of the issues involved.
Plaintiff cites us to Horst v. Guy, 211 N.W.2d 723 (N.D. Sup. Ct. 1973), for the proposition that a state court can exercise jurisdiction over nonresident class members. Horst is distinguishable from the situation here, and the court's exercise of jurisdiction in that case was entirely proper. The issue in Horst was whether the members of the class were "residents" of North Dakota for the purpose of receiving a bonus under that state's Vietnam Conflict Veterans' Compensation Act. The members of the class clearly had the requisite minimal contacts with North Dakota, and the interest of that state in determining who was entitled to a fund that existed only by the grace of its laws is so compelling as to establish beyond doubt the right of its courts to determine the interests of all claimants, resident or nonresident.[1]
*94 We are aware that § 85 of the tentative draft of the Restatement, Judgments 2d, a section which concerns all forms of representative suits, contains a paragraph which reads:
(2) A person represented by a party to an action is bound by the judgment even though the person himself does not have notice of the action, is not served with process, or is not subject to service of process.
If this statement is to be construed as positing that a judgment in a state court class action is binding on nonresident members of the class in the absence of any of the affiliating circumstances between the forum state and the litigation that we have described above, we suggest that § 85(2) misstates present law. The cases cited by the reporter do not support so broad a proposition. See Restatement, Judgments 2d, Reporter's Note § 85, comment f (Tent. Draft No. 2 1975). A reading of the 1975 Proceedings of The American Law Institute suggests that the intent of § 85(2) is merely to permit courts to exercise jurisdiction over nonresident members of a class when "affiliating circumstances," such as a "common trust fund," are present. 52 ALI Proceedings 346 (1975). If that is the reporter's intent, we agree. It follows that absent such "affiliating circumstances," and we repeat there are none here, the judgment in a class action cannot bind nonresident members of the class.

II

Forum Non Conveniens
In deciding whether to certify a class action, judicial policy is a relevant consideration. An element of that policy is the doctrine of forum non conveniens. As stated by our Supreme Court in Semanishin v. Metropolitan Life Ins. Co., 46 N.J. 531 (1966):
Under the doctrine of forum non conveniens a court may decline jurisdiction whenever the ends of justice indicate that trial in the forum selected by a plaintiff would be inappropriate. * * * Although *95 the doctrine is frequently invoked to protect the private interests of the litigants (taking into consideration such factors as the availability of witnesses, the ease of access to other sources of proof, etc.), * * * the doctrine should also be applied to protect the citizens of a state from the unjustifiable burden imposed upon them when controversies having no connection with the state are allowed to proceed to trial. Paxton Blair in his classic exposition of the doctrine of forum non conveniens has said: "Calendars become congested, and local taxpayers suffer unjustly from the burden of contributing to the expense of trying imported controversies." Blair, "The Doctrine of Forum Non Conveniens," 29 Colum. L. Rev. 1, 34 (1929). In Gore [v. United States Steel Corp., 15 N.J. 301 (1954)], this court quoted approvingly from Justice Jackson's opinion in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947):
"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. * * *" [at 533-534; ellipsis supplied]
We conclude that there is no reason whatever for litigating this class action in New Jersey. As we have said above, Bates is a corporation of the State of Delaware not authorized to do business and having no assets in New Jersey. The vast majority of the projected class are nonresidents of this State with no contacts here, and New Jersey has no special interest in adjudicating this litigation. Complete relief is available in the neighboring state of Delaware or in an appropriate federal court. Indeed Delaware is the more convenient and superior forum. We therefore conclude that, even assuming jurisdiction exists over the nonresident members of the class, the class action should not proceed in the courts of this State.
Since the large majority of the proposed class are nonresidents who would not be affected by the judgment, and since the greater convenience in processing the litigation lies outside this jurisdiction, we conclude that it is not appropriate for the action to proceed as a class action in this State.
The order of certification is reversed and the matter is remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Horst relies in part on a statement in Hansberry v. Lee, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22 (1940), that a class action is appropriate where "the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all because some are not within the jurisdiction or because their whereabouts is unknown * * *." (Emphasis supplied). This offhand statement has been the source of much confusion. At most, Hansberry is "poor authority because it was in fact not a class action, and its broad pronouncements of the requirements of due process in class actions are rank dicta." Maraist and Sharp, "Federal Procedure's Troubled Marriage: Due Process and the Class Action," 49 Texas L. Rev. 1, 6 (1970). Moreover, the dictum in Hansberry goes only to the power of a court to render a binding judgment on class members over whom it has jurisdiction, but who are not available to be served. Hansberry does not give a state court the ability to affect the legal relations of persons otherwise outside the scope of its judicial power.