Donald J. SMITH and Eleanor R. Smith, Plaintiffs,

v.

S&S DUNDALK ENGINEERING WORKS, LTD., Q.M.I., Ltd., Moffett Engineering, Royal & Sun Alliance Insurance, CCM Insurance Brokers and/or AON MacDonagh Boland, International Paper Company, John Doe Insurance Company, being a fictitious name, the true name presently unknown, jointly, severally and/or individually, Defendants.

No. CIV. A. 00-2660(WHW).

United States District Court, D. New Jersey.

April 16, 2001.

Randall Gregory Tashjian, Hackensack, NJ, Attorney for Plaintiffs.

Stephen L. Brodsky, Sonnenschein Nath & Rosenthal, New York, NY, Attorneys for Defendant Royal & Sun Alliance Insurance PLC.

James J. O'Hara, Graham, Curtin & Sheridan, Morristown, NJ, Attorneys for Defendant International Paper Company.

## OPINION

Walls, District Judge.

Defendant Royal & Sun Alliance Insurance PLC ("Royal & Sun UK") moves to dismiss the complaint under Fed. R. Civ. P. Rule 12(b)(2) for lack of personal jurisdiction, or in the alternative to dismiss due to *forum non conveniens.* Pursuant to

Fed. R. Civ. P. 78, this matter is decided without oral argument. The motion to dismiss for lack of personal jurisdiction is granted, and the motion to dismiss due to *forum non conveniens* is denied as moot.

## BACKGROUND

Plaintiffs Donald Smith ("Smith") and Eleanor Smith (collectively, "plaintiffs") filed this action which seeks a declaratory judgment that various defendants are required to provide insurance coverage, under an unspecified insurance policy, which allegedly provided product liability coverage to defendant S & S Dundalk Engineering ("Dundalk"). Plaintiffs filed an action in 1991 against several defendants, including Dundalk and Q.M.I., Ltd. ("QMI"), Dundalk's successor in interest. Plaintiffs alleged that Smith was injured in 1989 during the course of his employment by a box folding machine that had been manufactured in Ireland by Dundalk, an Ireland-based company. Judgment was entered in favor of plaintiffs against defendant Dundalk in July, 1997. Plaintiffs agreed to the dismissal of QMI as a defendant in that action on the condition that QMI would supply to plaintiffs the name and address of the insurance company who provided product liability insurance coverage for Dundalk. QMI later advised plaintiffs that Dundalk was insured for the loss by "Royal & Sun Alliance Insurance," with principal offices located at ¹³⁄₁₇ Dawson Street, Dublin 2, Ireland and 1 Chase Manhattan Plaza, New York City, New York. Plaintiffs allege that they attempted to "confirm coverage" with "Royal & Sun Alliance Insurance" at the Dublin address, which denied coverage. This action followed.

Plaintiffs sought and received an *ex parte* order for substituted service on the

defendants at their last known and present addresses by regular mail, certified mail, return receipt requested and Federal Express. In accordance with that order, plaintiffs served "Royal & Sun Alliance" by regular mail and certified mail in Dublin and New York.[1]

Royal & Sun UK moves to dismiss for lack of personal jurisdiction, or in the alternative, due to *forum non conveniens.* As evidence that jurisdiction is absent, it advances: (1) Royal & Sun UK is an English company, organized under the laws of England and with its principal place of business in London, England; (2) the company issues insurance policies in the United Kingdom and European Community; (3) Royal & Sun UK has no offices, employees, agents or other presence in New Jersey and has never had any such presence; (4) it has never conducted business meetings in New Jersey; (5) it has never advertised, solicited, or conducted business in New Jersey; (6) it has never filed New Jersey tax returns or paid New Jersey taxes; (7) it has never had agents for service of process or other agents in New Jersey; (8) it has never owned real or personal property or maintained bank accounts or lines of credit in New Jersey; (9) it never issued an insurance policy that would have provided products liability coverage for Smith's accident in the United States in 1989; (10) none of Royal & Sun UK's English subsidiaries ever issued a policy that would have provided the coverage sought for the 1989 accident; and (11) Royal Insurance (UK) Ltd. ("Royal UK"), a wholly owned English subsidiary of Royal & Sun UK, also lacks any of these types of contacts with New Jersey.

Royal & Sun UK asserts that in 1985, Royal UK provided an insurance policy to

---

**1.** It is unclear whether plaintiffs also served either address by Federal Express. Because Royal & Sun UK has filed this motion without

regard to sufficiency of service, the Court does not consider whether Royal & Sun UK was properly served.

Dundalk Engineering Works Limited, a company in receivership in Ireland, under policy No. RNN116605 (the "1985 policy"), which (1) expired on November 13, 1988; (2) was occurrence-based--*i.e.,* provided coverage only for accidents during the policy term; and (3) contained an express exclusion for claims that arose from goods sold or supplied to North America.[2]

Plaintiffs respond that: (1) "Royal & Sun Alliance" was served at its places of business in New York City and Dublin; (2) plaintiffs' counsel received a telephone call from Royal & Sun Alliance's general counsel, located in Charlotte, North Carolina shortly after the summons and complaint were served; (3) the North Carolina general counsel informed plaintiffs that it forwarded the matter to Royal & Sun Alliance's "major case unit" in Philadelphia, Pennsylvania; (4) a representative from that Philadelphia office referred the matter to the One Chase Manhattan Plaza location; (5) Royal & Sun UK's present counsel requested from plaintiffs, with the Court's approval, several extensions of time within which to answer or respond to the Complaint; (6) plaintiffs and Royal & Sun UK's counsel corresponded regarding the 1985 insurance policy; (7) the 2001 Lawyers' Diary lists an address for a "Royal & Sun Alliance" in Parsippany, New Jersey and thus Royal & Sun Alliance "appears as doing business in the State of New Jersey"; and (8) "presumably, the defendant has filed Certificates of Authority to do business in the States listed as discovered by plaintiffs' counsel to date, pending further investigation." *See* Plaintiffs' Brief in Opposition to the Motion to Dismiss ("Plaintiff Br."), at 1-6.

Plaintiffs argue:

[I]t has been demonstrated that the defendant, Royal & Sun Alliance Insurance Company, has maintained and continues to maintain active business offices within the State of New Jersey as well as the State of Pennsylvania, North Carolina and the State of New York. Due to the broad scope of Federal judicial power, there is no Constitutional objection to exercising nationwide jurisdictional power when an action is brought in the Federal District Court.... Pending further discovery, it is probable that the defendant, Royal & Sun Alliance, has filed Certificates of Authority to do business in the States referenced and operates actively within those States.

Plaintiff Br., at 9. Plaintiffs also rely upon the fact that defendant delayed its response to the complaint and waited several months to raise personal jurisdiction defense while it investigated and "defended" this lawsuit. Plaintiff Br. at 9-10.

In reply, Royal & Sun UK states: (1) it is irrelevant that there are insurance companies within the U.S. that operate under the "Royal & Sun Alliance" tradename; (2) the companies referenced by plaintiffs are "US businesses of Royal subsidiaries domiciled in the United States"; (3) the "Royal subsidiaries to whose domestic offices plaintiffs refer are independent companies, separately organized under the laws of various states, that are only indirect subsidiaries of Royal & Sun UK"; and (4) "No Royal company operating under the Royal & Sun Alliance tradename and organized in any of the states of the United States ever issued an insurance policy to [Dundalk or QMI]." Royal & Sun UK Reply Br., at 1-2. These assertions are supported by the Affidavit of Lisa Pettigrew, the Corporate Secretary of the Royal Group, Inc. ("Pettigrew Aff."). Ms. Pettigrew declares that Royal Group, Inc. ("Royal

---

**2.** It is unclear whether Dundalk Engineering Works Limited is the same company as defendant Dundalk.

Group") is a corporation organized under the laws of Delaware. She further states that no company that operates under the Royal & Sun Alliance tradename and organized under the laws of any of the states in the United States ever issued an insurance policy to Dundalk. *Id.* at ¶ 2. She asserts that Royal Group's counsel communicated with plaintiffs' counsel at the beginning of this action because "a New York office of certain Royal domestic companies received a copy of the summons and complaint in the action. That office was not authorized to accept service for Royal & Sun UK." *Id.* at ¶ 3. The Supplemental Reply Declaration of Peter Mancini, a solicitor for Soyal & Sun UK in London, indicates that Royal & Sun UK's office in Dublin was the office served with the Summons & Complaint.

Because it appeared that plaintiffs had named one company with the name "Royal & Sun Alliance Insurance" as a defendant but possibly served two different and separately incorporated companies--one located in New York, and one located in Dublin-- this Court contacted the parties through its law clerk to obtain additional information. Specifically, the Court requested that plaintiffs determine (1) whether Royal & Sun UK was in fact the defendant they intended to name, and (2) if not, which party they meant to name as a defendant, as only one "Royal & Sun Alliance Insurance" was named in the Complaint. In addition, the Court asked how, if at all, the companies in New York and Dublin whose offices were served were related to each other.

In response to the Court's inquiry, Royal & Sun UK submits the Supplemental Reply Affidavit of Lisa Pettigrew ("Supp. Pettigrew Aff."). Ms. Pettigrew declares that the subsidiaries of Royal Group Inc. that do business in the State of New Jer-

sey and issue insurance policies are "fully capitalized, distinct corporate entities that are subsidiaries of Royal Group, Inc., a Delaware corporation, which itself is an indirect subsidiary of Royal & Sun UK." Supp. Pettigrew Aff., at ¶ 1. Attached to the Affidavit is a three-page chart that documents the relationship of Royal & Sun Alliance Insurance plc to its subsidiaries. According to the chart, Royal & Sun UK is the ultimate parent company, six levels removed, of Royal Group, Inc. of Delaware. There are over forty separately incorporated entities that are shown as indirect subsidiaries of Royal Group, Inc. in the U.S. Ms. Pettigrew asserts that five of those companies do business in New Jersey, but each is separately incorporated and is several levels beneath Royal & Sun UK. *Id.* at ¶¶ 3-4.[3] The Court's own reading of the chart reveals that each of the five companies is a direct subsidiary of Royal Group and is seven layers removed from Royal & Sun Insurance Alliance plc. Moreover, Ms. Pettigrew asserts-albeit in somewhat conclusory form-that none of the subsidiaries here satisfies the tests of having "played a part in the transaction at issue" or the parent's "dominat[ion of] the subsidiary [such that the subsidiary] is the 'alter ego' of the parent and the independence of the companies is disregarded." *Id.* at ¶ 2.

In addition, Ms. Pettigrew has supplied a Second Supplemental Reply Affidavit, in which she asserts that the New York office that was served is the address of the principal offices of five different Royal subsidiaries, one of which is named Royal & SunAlliance Personal Insurance Company. ¶ 2. She also states that none of those subsidiaries is licensed to issue policies in New Jersey and none is authorized to

---

**3.** The names of the five companies are (1) Royal Insurance Company of America; (2) American and Foreign Insurance Company;

(3) Safeguard Insurance Company; (4) Globe Indemnity Company; and (5) Royal Indemnity Company.

accept service of behalf of Royal & Sun UK.

Plaintiffs insist that Royal & Sun UK and the New York companies it served are one and the same.[4] They submit a "Supplementary Certification" [sic] of Randall Tashjian, Esq., counsel for plaintiffs ("Tashjian Supp. Cert."). In his Certification, plaintiffs' counsel claims that he received a check from "Royal & Sun Alliance" in partial settlement of an unrelated case that was pending in Bergen County, "wherein Royal & Sun Alliance represented a defendant designated as Wooden Environments, Inc." Tashjian Supp. Cert. at ¶ 4. He further insists that the logo on this check, issued out of a bank in Atlanta, Georgia, is the same as the logo on the letterhead of a June 10, 1998 letter from Royal & SunAlliance, at the ${}^{13}\!/_{17}$ Dawson Street, Dublin address which notified him that Royal & Sun UK did not hold a product liability policy that covered plaintiff's accident in this case. Because of the logo similarity, he maintains that "there is no question that the Royal & Sun Alliance with whom plaintiffs corresponded with [sic] in the United Kingdom is the same party as was dealt with in the unrelated case evidenced by [the check]." *Id.* at ¶¶ 6-7.

### DISCUSSION

#### I. *Personal Jurisdiction*

■ Because this case arises under federal law, the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court looks to the Due Process clause of the Fifth Amendment to guide its jurisdictional inquiry. *See Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 293 (3d Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985). This inquiry has been construed to incorporate the general "minimum contacts" test used under the Fourteenth Amendment inquiry, which requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.,* quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). When the suit proceeds under a federal law which authorizes nationwide or worldwide service of process, a district court may aggregate a defendant's "national contacts" with the United States as a whole to determine whether a foreign defendant has sufficient contacts with the forum. *See Max Daetwyler,* 762 F.2d at 293-295. Plaintiffs do not-and cannot-contend that such a nationwide or worldwide service provision is applicable. The Declaratory Judgment Act does not establish nationwide or worldwide service. *See Whistler Corp. v. Solar Electronics, Inc.,* 684 F.Supp. 1126, 1129 (D.Mass.1988) (Declaratory Judgment Act does not provide federal statutory authorization for nationwide service of process). Nor do either the Hague Convention on service of process abroad or Rule 4(f), which implements the Hague Convention. *See CFMT, Inc. v. Steag Microtech, Inc.,* 965 F.Supp. 561, 563-564 (D.Del.1997) (Rule 4(f) does not provide a statutory basis to assert personal jurisdiction over a foreign defendant); *Narco Avionics, Inc.v. Sportman's Market, Inc.,* 792 F.Supp. 398, 402 (E.D.Pa. 1992) (Hague Convention is not a nationwide or worldwide service of process statute).

■ In a diversity case or a case that arises under a federal law which does not provide for service of process on a party outside the state, the issue of personal jurisdiction must be determined according to the law of the forum state. *Max Da-*

---

4. Because plaintiffs take this position, this Court does not decide whether it would have personal jurisdiction over any Royal entity other than Royal & Sun UK, including any of the five who share the office at 1 Chase Manhattan Plaza in New York.

*etwyler,* 762 F.2d at 295; *CFMT,* 965 F.Supp. at 565; *Narco Avionics,* 792 F.Supp. at 402, citing *Omni Capital Int'l v. Rudolph Wolff & Co., Ltd.,* 484 U.S. 97, 105, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987). In such cases, the federal district court is constrained by the Fourteenth Amendment's requirements of minimum contacts with the forum state, instead of a national contacts analysis. *CFMT,* 965 F.Supp. at 565 ("In the absence of a federal statute or rule authorizing nationwide or worldwide service of process, a court may not exercise jurisdiction on the basis of a defendant's national aggregated contacts"); *Narco Avionics,* 792 F.Supp. at 402. Accordingly, this Court must undertake the traditional Fourteenth Amendment jurisdictional analysis under New Jersey's longarm statute. *Id.*

Pursuant to Federal Rule of Civil Procedure 4(k), formerly Rule 4(e), federal "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits." *See Sunbelt Corp. v. Noble, Denton & Associates, Inc.,* 5 F.3d 28, 31 (3d Cir.1993) (discussing former Rule 4(e), now incorporated into Rule 4(k)). *See also CFMT,* 965 F.Supp. at 563 ("Rule 4(k) replaces prior subdivisions (e) and (f) and governs a defendant's amenability to service of summons under present law, and, concomitantly, the statutory authority to exercise personal jurisdiction over a defendant."). New Jersey's long arm statute provides for personal jurisdiction as far as is permitted by the Fourteenth Amendment to the United States Constitution. *See N.J. Civ. Pract. R.* 4:4-4; *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 145 (3d Cir.1992); *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.1981). Therefore, the question of whether this Court has jurisdiction over the defendant is determined by federal constitutional law. *See*

*Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 698 (3d Cir.1990).

■ The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only when "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). It is plaintiff's burden to prove that the defendant has purposefully availed itself of the forum state. *See Burke v. Quartey,* 969 F.Supp. 921, 924 (D.N.J.1997).

■ To prove that the defendant has purposefully availed itself of that state, a plaintiff may rely upon a defendant's specific contacts with the forum state. Personal jurisdiction pursuant to such contacts is known as specific jurisdiction. Specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Dollar Sav. Bank v. First Security Bank of Utah,* 746 F.2d 208, 211 (3d Cir. 1984). A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." *World Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citations omitted). What constitutes minimum contacts varies with the "quality and nature of defendant's activity." *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum and the litigation." *Keeton v. Hustler,* 465 U.S. 770,

104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). Otherwise stated, there must be at least "a single deliberate contact" with the forum state that relates to the cause of action. *United States Golf Ass'n v. United States Amateur Golf Ass'n,* 690 F.Supp. 317, 320 (D.N.J.1988). The unilateral acts of the plaintiff, however, will not amount to minimum contacts. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868; *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228. "The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another person.' " *Id.,* quoting *Burger King,* 471 U.S. at 474, 105 S. Ct. at 2183.

■ Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Company v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *Pennzoil Products Co. v. Colelli & Assoc., Inc.,* 149 F.3d 197, 201 (3d Cir.1998). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). To determine reasonableness, a court considers the burden on the defendant, the forum state's interest to adjudicate the dispute, the plaintiff's interest to obtain convenient and effective relief, the interstate judicial system's interest to obtain the most efficient resolution of controversies, and the shared interest of the several States to further substantive social policies. *Id.*

■ If the plaintiff cannot establish specific jurisdiction, a court may exercise general jurisdiction over the defendant if the defendant has maintained "continuous and systematic contacts" with the forum state. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868. To establish general jurisdiction the plaintiff must show significantly more than mere minimum contacts with the forum state. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987); *Database America, Inc. v. Bellsouth Advertising & Publishing Corp.,* 825 F.Supp. 1195, 1209 (D.N.J.1993). The facts required to establish general jurisdiction must be "extensive and persuasive." *Reliance Steel Prods. v. Watson, Ess, Marshall,* 675 F.2d 587, 589 (3d Cir.1982).

■ The burden to produce actual evidence of the defendant's contacts with the forum state rests on the plaintiff. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 and n. 9 (3d Cir.1984). Moreover, the plaintiff must sustain its burden of proof "through sworn affidavits or other competent evidence," and not through bare pleadings alone. *Id.* at 67. n. 9; *see also Stranahan Gear Co., Inc. v. NL Industries, Inc.,* 800 F.2d 53, 58 (3d Cir. 1986) (cursory allegation reiterated in a sworn affidavit is insufficient to satisfy the plaintiff's burden of proof). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must construe disputed facts in favor of the plaintiff and accept them as true. *Shushan,* 954 F.2d at 142.

*Analysis*

*1. Specific Jurisdiction*

To establish specific jurisdiction, plaintiffs must demonstrate that their cause of action directly relates to Royal & Sun UK's contacts with New Jersey and that Royal & Sun UK purposefully and voluntarily established such contacts with New

Jersey. *See Carteret,* 721 F.Supp. at 708. *See also Mellon Bank (East) PSFS Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992) (specific jurisdiction exists when plaintiff's claims arise from or relate to defendant's forum contacts). However, plaintiffs do not assert that this Court may exercise specific jurisdiction over the defendant. Nor do they deny that the 1985 policy discussed by Royal & Sun UK did not provide coverage for Smith's 1989 accident. In fact, they point to no specific insurance policy or any other forum-directed activity out of which this action arises. Plaintiffs have failed to establish the existence of specific jurisdiction over Royal & Sun UK. *See Compagnie des Bauxites de Guinea v. Insurance Co. of North America,* 651 F.2d 877, 885–86 (3d Cir.1981) (no jurisdiction over non-resident insurers that had directed no activities to or issued no policies covering risks in the forum state), *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1312 (1982). Consequently, this Court may only exercise jurisdiction over the defendant if plaintiffs have established general jurisdiction.

### 2. *General Jurisdiction*

■ Plaintiffs have also failed to meet their burden to establish the "continuous and systematic contacts" necessary to sustain general jurisdiction over Royal & Sun UK. *See Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.,* 6 F. Supp.2d 349, 353 (D.N.J.1998).

Royal & Sun UK has set forth evidence that it does no business in New Jersey and has no contacts in New Jersey. Its affidavits support that it has no property, bank or credit accounts, employees, officers, agents or records in New Jersey and has never advertised, solicited business or conducted business in the state. It has further established the existence of over forty indirect subsidiaries of Royal & Sun UK who are located throughout the U.S. and specifically, five which do business in New Jersey. Royal & Sun UK has established that each of those five companies is a distinct, separately incorporated entity. And plaintiffs have adduced no evidence that Royal & Sun UK has any involvement with their business activities.

■ Plaintiffs insist that "Royal & Sun Alliance Insurance" does business in New Jersey and elsewhere in the United States. However, plaintiffs come forward with no specific evidence that Royal & Sun UK does business in New Jersey or directs the business affairs of any of its U.S. subsidiaries in New Jersey. Instead, they proffer only the existence of several offices, in New York, North Carolina, and Philadelphia of one or more companies who are identified in plaintiff's brief and affidavits only as "Royal & Sun Alliance." This information does not in any way refute Royal & Sun UK's evidence which demonstrates that the corporate entities which contain "Royal & Sun Alliance" in their tradenames are separate and distinct corporate entities from Royal & Sun UK. Nor does the listing for a "Royal & Sun Alliance" in the New Jersey Lawyer's Diary establish that Royal & Sun UK does business in New Jersey.[5] Moreover, although plaintiffs assert that defendant "presumably" has filed Certificates of Authority to do business in New Jersey and other states and that it expects to locate such certificates,

---

**5.** Review of the Lawyers' Diary entry submitted by plaintiffs reveals that a "Corporate Support Office" for "Royal and SunAlliance" is listed in North Carolina and a worker's compensation office is listed in Parsippany, New Jersey. Also listed are Royal Indemnity Co., Royal Insurance Company of America, Royal Lloyds of Texas, Royal Special Risks Insurance Co., Royal Surplus Lines, and Safeguard Insurance Co. None of these entries evidences that Royal & Sun UK does business in New Jersey or that Royal & Sun UK has any involvement in the business activities of the listed entities or any other subsidiary.

"pending further discovery," nowhere do plaintiffs move to hold this motion in abeyance and for the opportunity to conduct discovery related to the existence of personal jurisdiction.[6]

Because Royal & Sun UK has demonstrated that Royal & Sun UK is a distinct corporate entity from the various subsidiaries that exist in the U.S., it is plaintiffs' burden to establish that jurisdiction over the parent corporation may be predicated upon jurisdiction over one or more of the subsidiaries:

> The Third Circuit has advised that "a rule which imposes liability on a corporation which never exercised its general authority over its subsidiary may unduly penalize the corporation ..." *Lansford–Coaldale Joint Water Authority v. Tonolli Corp.*, 4 F.3d 1209, 1221 (3d Cir. 1993)....

*Decker v. Circus Circus Hotel*, 49 F.Supp.2d 743, 747 (D.N.J.1999). *See also Culbreth v. Amosa (Pty) Ltd.*, 898 F.2d 13, 14 (3d Cir.1990) (party who seeks to pierce corporate veil must establish that controlling corporation wholly ignored separate status of controlled corporation and so dominated and controlled its affairs that separate existence was a mere sham); *Pfundstein v. Omnicom Group, Inc.*, 285 N.J.Super., 245, 254, 666 A.2d 1013 (App. Div.1995) (jurisdiction over a subsidiary corporation that keeps it own books and bank accounts, files income tax returns, is managed by its own board of directors, makes its own employment decisions, and directs its own day-to-day operations, will not be imputed to parent corporation). In *Decker*, this Court refused to "disregard" the "existence of separate corporate entities ... save some evidence that a defendant subsidiary is dominated or controlled by the parent corporation." *Id.*

The same reasoning applies here. There is no basis to disregard the independent existence of Royal & Sun UK's subsidiaries in the absence of evidence that any subsidiary is controlled or dominated by Royal & Sun UK-and plaintiffs have adduced no such evidence. Although Royal & Sun UK has in only a conclusory fashion asserted that it does not dominate the affairs of any of the U.S. subsidiaries or act as their alter ego, it is not defendant's burden to establish the lack of control. Rather, the burden rests with plaintiffs to demonstrate that the parent dominated the business activities of any of its subsidiaries or that it acted as the "alter ego" of the parent. Apparently unaware of this strict standard, plaintiffs' counsel asserts, "Defendant seeks a dismissal of this case based on a fiction of corporate structure, which is not relevant to the issues before the Court." Tashjian Supp. Cert. at ¶ 8. Yet plaintiffs offer no evidence, let alone factual allegations to establish that Royal & Sun UK's corporate structure as submitted to the Court is "fictitious." Furthermore, plaintiffs make no attempt to meet their burden to establish domination or control of any subsidiary by Royal & Sun

---

**6.** Jurisdictional discovery as to whether any Royal & Sun company has filed a Certificate to do business in New Jersey would be futile. If a subsidiary filed such a certificate, plaintiffs have averred no facts that would establish that Royal & Sun dominated the subsidiar(ies)' activities. If Royal & Sun UK itself filed a certificate to do business in New Jersey, it would still be insufficient to establish general jurisdiction, absent evidence that Royal & Sun UK was *actually* doing business in New Jersey. *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) (qualification to do business in a state is "of no special weight" in evaluating general jurisdiction), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1047, 122 L.Ed.2d 356 (1993); *Atkinson & Mullen Travel, Inc. v. New York Apple Tours Inc.*, No. CV 97-4460, 1998 WL 750355, 48 U.S.P.Q.2d 1377, 1379 (D.N.J. September 16, 1998) (having a license to conduct business in New Jersey is not "in and of itself sufficient to establish continuous and substantial contacts").

UK. They have failed to establish that Royal & Sun had any control over any of the subsidiaries, let alone that it "so dominated and controlled" their affairs that their existence was a "mere sham" or that they were mere "alter egos" of the parent.[7]

The existence of a lawsuit with a "Royal & Sun Alliance" in which plaintiffs' counsel was previously involved does not alter this conclusion. Plaintiffs have done nothing to rebut Royal & Sun UK's evidence that Royal & Sun UK does no business and has never had any contacts with New Jersey. At most, plaintiffs have established that their attorney was involved in a lawsuit with an indirect subsidiary of Royal & Sun UK that operates in New Jersey or elsewhere in the U.S. Plaintiffs' assertion that the logos on (1) the check issued in that lawsuit and (2) the letterhead from Royal & Sun UK's Dublin office reveals only that Royal & Sun UK and one of its subsidiaries use the same logo. Mere identity of corporate logos, without more, cannot be sufficient to establish that one company dominated another's business activities or acted as the alter ego of it. Significantly more overlap between companies, such as overlap of employees, has been held insufficient to establish the requisite showing to disregard the corporate structure. *See Visual Security Concepts, Inc. v. KTV, Inc.*, 102 F. Supp.2d 601, 606 (E.D.Pa.2000) (dual role of an employee in both companies, without more, was insufficient to invoke alter ego principles), quoting *Arch v. American Tobacco Co., Inc.*, 984 F.Supp. 830, 838 (E.D.Pa.1997) ("overlapping directors and officers do not alone establish an alter ego relationship"); *Savin Corp. v.*

*Heritage Copy Prods., Inc.*, 661 F.Supp. 463, 471 (M.D.Pa.1987) (some overlap between directors is not enough, without more, to conclude that corporate structures have been abandoned).

Furthermore, defense counsel's communications with plaintiffs to obtain extensions of its time to answer and the Dublin office's letter to plaintiffs that denied the existence of a policy that would have provided coverage are of no moment. Neither is sufficient to establish "systematic and continuous contacts" necessary to sustain general jurisdiction. This Court concludes that the minimum contacts with New Jersey necessary to support *in personam* jurisdiction are not present.[8]

### 3. *"National Contacts" Test Under Rule 4(k)(2)*

The personal jurisdiction inquiry does not end with the finding that Royal & Sun UK's New Jersey contacts are insufficient. Under Rule 4(k)(2), service of process-the sufficiency of which Royal & Sun UK has not contested-may be sufficient to confer personal jurisdiction over a foreign corporation. Fed. R. Civ. P. 4(k)(2). As amended in 1993, Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and the laws of the United States, serving a summons ... is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant *who is not subject to the jurisdiction of the courts of general jurisdiction of any state.*

*Id.* (emphasis added). According to the Advisory Committee Notes, Rule 4(k)(2)

---

**7.** Accordingly, this Court need not determine whether it would in fact have jurisdiction over any of the subsidiaries, and by imputation, Royal & Sun UK.

**8.** Because it finds that plaintiffs have not made a threshold showing of sufficient minimum contacts with New Jersey to warrant the

exercise of personal jurisdiction over defendant, this Court need not address the issue of whether the exercise of jurisdiction would comport with "fair play and substantial justice." *See Vetrotex Certainteed Corporation v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 154 n. 9 (3d Cir.1996).

was enacted to fill a specific gap in the federal law presented when a foreign defendant may have significant aggregate contacts with the United States, but insufficient contacts with any single state to support jurisdiction under state long-arm statutes. *See also BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp.*, 229 F.3d 254, 258 (3d Cir.2000) (Rule 4(k)(2) enacted to allow jurisdiction over international defendant that has insufficient contacts to satisfy due process concerns of the long arm-statute of any state). The rule first requires a court to determine whether the case arises under federal law and whether the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction there. If so, the court must scrutinize plaintiff's allegations to ascertain whether plaintiff has demonstrated that defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process. *CFMT Inc. v. Steag Microtech, Inc.*, No. Civ. A. 95-442-LON, 1997 WL 313161, *7 (D.Del. Jan.9, 1997), *aff'd*, 965 F.Supp. 561 (D.Del.1997).[9] Under this Rule, it remains plaintiffs' burden to produce competent evidence of sufficient contacts with the United States to justify the district court's assertion of either specific or general jurisdiction. *Id.* at 259; *Eggear v. Shibusawa Warehouse Co.*, No. Civ. A. 00-CV-4636, 2001 WL 267881 (E.D.Pa. March 19, 2001) (burden to prove existence of jurisdiction under Rule 4(k)(2) rests with plaintiff).

■ To establish jurisdiction under Rule 4(k)(2), plaintiffs must demonstrate that Royal & Sun UK is not subject to the jurisdiction of the courts of general jurisdiction of any state. To satisfy this requirement, plaintiffs are required "to make an affirmative representation that the defendant is not subject to the general jurisdiction of any state court." *CFMT*, 1997 WL 313161, at *7 & n. 10. Plaintiffs make no attempt to satisfy this requirement. Rather, they aver generally:

> [I]t has been demonstrated that the defendant, Royal & Sun Alliance Insurance Company, has maintained and continues to maintain active business offices within the State of New Jersey as well as the State of Pennsylvania, North Carolina and the State of New York. Due to the broad scope of Federal judicial power, there is no Constitutional objection to exercising nationwide jurisdictional power when an action is brought in the Federal District Court.... Pending further discovery, it is probable that the defendant, Royal & Sun Alliance, has filed Certificates of Authority to do business in the States referenced and operates actively within those States.

Plaintiff Br., at 9.[10] Plaintiffs also contend: There is no question ... that Royal & Sun Alliance Insurance Company en-

---

**9.** This is similar to the test used when a specific statute or rule affords nationwide or worldwide service of process, but should not be confused with that test because this requires the additional step of proving that the international defendant has insufficient minimum contacts with any of the fifty states to support jurisdiction under the Fourteenth Amendment.

**10.** Plaintiffs cite *Feldman v. Bates Mfg. Co., Inc.*, 143 N.J.Super. 84, 362 A.2d 1177 (1976) for this proposition. However, *Feldman* involved only the question of whether certifica-

tion of a class action was appropriate when most of the class members were nonresidents with no contacts whatsoever with the state. *Id.* at 88, 362 A.2d 1177. The court made that observation that while a district court could have such jurisdiction over a class action, a state court could not exercise binding jurisdiction over plaintiffs who reside outside the state unless there was a reasonable basis for doing so. *Id.* at 89, 362 A.2d 1177.

Notwithstanding the inapplicability of *Feldman* to this situation, this Court interprets plaintiffs' vague argument to be one that the Court should exercise jurisdiction over the

gages in active, continuous business within the State of New Jersey and has officers, agents, and servants transacting business within, [sic] not only the jurisdiction of New Jersey, but as well, [sic] New York, Pennsylvania and North Carolina in addition to perhaps many other States in the United States which is subject to continuing discovery.

Plaintiff Br. at 11.

█ Although plaintiffs twice mention discovery, they allege the existence of no discoverable facts that would establish both (1) that Royal & Sun UK has insufficient minimum contacts with any state to be subject to personal jurisdiction in any state; and (2) the company nevertheless has sufficient contacts with the United States as a whole to warrant the exercise of jurisdiction over it. Instead, plaintiffs make only conclusory allegations, unsupported by anything other than the fact that some entity named "Royal & Sun Alliance Insurance Company" may possibly do business in several states. Plaintiffs do not satisfy the strict standard to pierce the corporate veil for purposes of personal jurisdiction and to impute the business activities of Royal & Sun UK's indirect subsidiaries to Royal & Sun UK itself. Moreover, if plaintiffs were successful in proving that Royal & Sun UK does business in several other states, that would be sufficient to confer jurisdiction in a state other than New Jersey and would render the narrow exception of Rule 4(k)(2) unavailable. Apart from their conclusory allegations,

defendant based upon a "national contacts" analysis. As discussed, such an analysis is generally unavailable in a case that arises under federal law in the absence of a federal statute or rule that provides for nationwide or worldwide service of process, which is absent here. Instead, such an analysis is available only if plaintiffs establish that there are insufficient contacts with any state for the exercise of personal jurisdiction to satisfy due process in any of those states.

plaintiffs offer nothing that would establish (1) insufficiency of any state's contacts with Royal & Sun UK; (2) the sufficiency of Royal & Sun UK's "national contacts"; or (3) the entitlement to jurisdictional discovery from Royal & Sun UK.

Because plaintiffs have failed to establish the existence of personal jurisdiction over Royal & Sun UK under Rule 4(k)(2), the action must be dismissed as to Royal & Sun UK.[11]

## II. *Forum Non Conveniens*

Because personal jurisdiction is absent and the matter must be dismissed as to Royal & Sun UK, Royal & Sun UK's motion to dismiss the entire action due to *forum non conveniens* is denied as moot.[12]

## *CONCLUSION*

For the foregoing reasons, Royal & Sun UK's motion to dismiss due to lack of personal jurisdiction is granted, and its motion to dismiss the entire action due to *forum non conveniens* is denied as moot.

**SO ORDERED.**

## *ORDER*

Defendant Royal & Sun Alliance Insurance PLC ("Royal & Sun UK") moves to dismiss the complaint under Fed. R. Civ. P. Rule 12(b)(2) for lack of personal jurisdiction, or in the alternative due to *forum non conveniens*. Having considered the parties' submissions, and for the reasons stated in the accompanying opinion,

11. As stated, this holding, and the Court's discussion, should not be construed in any way to indicate whether the Court would have jurisdiction over any other Royal entity.

12. Because there is no personal jurisdiction over Royal & Sun UK, the Court sees no basis for its standing to argue the convenience of the forum to other parties.

IT IS on this day of April, 2001:

ORDERED that Royal & Sun UK's motion to dismiss for lack of personal jurisdiction is GRANTED, and the motion to dismiss the entire action due to *forum non conveniens* is DENIED as moot.